NOT FOR PUBLICATION (Doc. No. 4)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| ROBERT CAMPBELL, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF DOWNE, RENEE BLIZZARD, LISA GARRISON, DAVID REED and STEVE SIMMERMAN in their individual and official capacities, <br><br> Defendants. | Civil No. 12-685 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion of Renee Blizzard ("Defendant") to Dismiss the Complaint of Robert Campbell ("Plaintiff"). Plaintiff brings his claim pursuant to 42 U.S.C. § 1983 for violations of his rights under the First Amendment and Fourteenth Amendment of the United States Constitution. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's Complaint fails to state a claim upon which relief may be granted under § 1983, and, moreover, fails to allege, with appropriate specificity, how his constitutional rights were violated. In the alternative, Defendant asserts that she is entitled to absolute legislative immunity and/or qualified immunity from suit. This Court denies absolute legislative immunity and/or qualified immunity and denies Defendant's 12(b)(6) Motion.

1

I.     **BACKGROUND**

The present lawsuit, filed December 23, 2011, comes before this Court on the claim that members of the Downe Township Committee, including Defendant, deprived Plaintiff of rights guaranteed to him by the First and Fourteenth Amendments. After removal under 28 U.S.C. § 1441 from the Superior Court of N.J., Cumberland County, Law Division, Defendant filed a Notice of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). The merits of Defendant's 12(b)(6) Motion, as well as the applicability of absolute legislative immunity and qualified immunity, are at issue before this Court.

After he was dismissed from his position as the Housing and Zoning Officer of Downe Township, Plaintiff states that he ran for public office to "further express and exercise his First Amendment right of free speech, association, petition for governmental redress and/or otherwise participate in his election/governmental process." Compl., ¶ 6. He alleges in his Complaint that in response to his election to the Committee, the then-current Downe Township Committee, which included Defendant, filed a Verified Complaint and Order to Show Cause seeking to deprive him from "engaging in constitutionally protected comment/expression including his exercise of free speech, petitioning for governmental redress and First Amendment Rights of belief and association and his right of Due Process as guaranteed by the Fourteenth Amendment." Compl., ¶¶ 12, 13. Plaintiff claims that Defendant's alleged actions caused him to sustain financial losses, emotional distress, and "other damages," and he seeks compensation for his losses and the cost of suit, attorneys' fees, and punitive damages. Compl., ¶¶ 4-5.

The individuals in the present case have been involved in a series of legal interactions with one another since 2009. Plaintiff's first lawsuit against Township Committee members, including Defendant, arose after Plaintiff was terminated from his employment as the Housing

and Zoning Officer for Downe Township. Compl., ¶¶ 4, 6. In that Complaint, dated June 2009, Plaintiff alleged that the Township and the individual members of the Committee violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq., by terminating his employment because of his differing political affiliation. Robert Campbell v. Downe Township and Renee Blizzard, No. L-508-09 (N.J. Super. Ct. Law Div., Cumberland Cnty., 2009). Following his termination, Plaintiff ran for office on the Downe Township Committee, and in November 2009, was elected to a seat. Compl., ¶ 6.

As referenced above, in December 2009, the Downe Township Committee members, including Defendant, filed a Verified Complaint and Order to Show Cause with the Superior Court of New Jersey, Cumberland County, Chancery Division. The Hon. James E. Rafferty found that Plaintiff could assume his seat on the Committee, but had to abstain from any discussions regarding his pending CEPA claim. In December 2011, Plaintiff filed in the Superior Court of N.J., Cumberland County, Law Division, the instant lawsuit, which Defendant removed to federal court.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a Motion to Dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a Motion to Dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To make this determination, a three-part analysis is needed. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 129 S.Ct. at 1947). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal, 129 S.Ct. at 1950). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 129 S.Ct. at 1950). This plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1949. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### III.  DISCUSSION

#### A. Constitutional Claim

This Court denies Defendant's 12(b)(6) Motion. Plaintiff's Complaint states a claim upon which relief can be granted. It establishes that the Township Committee has the full legislative authority of the municipality, and it contains a short and plain statement of his claim, stating that Defendant sought to deprive Plaintiff of his First and Fourteenth Amendment rights by enjoining him from assuming his elected office, or, alternatively, requiring him to dismiss his pending lawsuit against the Township and the members of the Township Committee, including Defendant. Compl., ¶¶ 9, 11.

Plaintiff's Complaint in the instant case makes no mention of his prior lawsuit against the Township. Nevertheless, Plaintiff's Complaint does allege that, because of Plaintiff's

4

"association contrary to political affiliations and agenda of the defendants," Defendant and others sought to inhibit Plaintiff's exercise of his constitutional rights. Specifically, Plaintiff alleges that Defendant and other Committee members' Verified Complaint, Order to Show Cause, and other "acts under color of state law" deprived him of the exercise of his First Amendment rights by seeking to encumber—if not eliminate—his ability to assume elected office. Compl., ¶ 13. In his Complaint, Plaintiff states that his campaign for public office was inspired by his continued effort to assert his First and Fourteenth Amendment rights, and that Defendant's attempt to block him from assuming that office severely hindered that effort. Compl. ¶ 6. The Third Circuit, in O'Connor v. City of Newark, discussed the threshold to establish a First Amendment retaliation claim, stating:

> First Amendment retaliation claims are always individually actionable, even when relatively minor. Even "an act of retaliation as trivial as failing to hold a birthday party for a public employee," if "intended to punish her for exercising her free speech rights," may be actionable if under the circumstances it would be sufficient to "deter a person of ordinary firmness" from exercising his or her First Amendment rights. A First Amendment retaliation claim will lie for any individual act which meets this "deterrence threshold," and that threshold is very low: . . . a cause of action is supplied by all but truly de minimis violations.

O'Connor v. City of Newark, 440 F.3d 125, 127-128 (3d Cir. 2006) (citing Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir. 2000).

Plaintiff's claims could give rise to relief because it is plausible that he incurred a pecuniary injury based on the actions of members of the Township Committee, including Defendant. While Defendant argues that she did not have "personal involvement" in the alleged constitutional deprivation, Defendant was a member of the Downe Township Committee during the time in which the Verified Complaint and Order to Show Cause were filed against Plaintiff. Br. in Support of Def.'s Mot. to Dismiss, 7-8; Compl. ¶ 3. At the time of the alleged constitutional violation, Defendant was mayor. Br. in Support of Def.'s Mot. to Dismiss, 3.

5

According to New Jersey statute, "The mayor shall preside at meetings of the committee and shall have the right to debate and vote on all questions before the committee." N.J.S.A. 40A: 63-5(c). As such, it is a reasonable claim that Defendant was personally involved with the decision to file the Order to Show Cause against Defendant.

Taking these factors into consideration, the Court finds that Plaintiff has alleged the elements necessary to support a claim for relief under 42 U.S.C. § 1983.

### B. The Immunity Claims

#### 1. Absolute Immunity

This Court finds that Defendant is not entitled to absolute immunity. Federal, state, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. § 1983 for their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). At the municipal level, absolute legislative immunity attaches to actions that are both (1) substantively legislative, involving "policy-making of a general purpose" or "line-drawing"; and (2) procedurally legislative, meaning that they are "passed by means of established legislative procedures." Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996). This inquiry must be made "stripped of all considerations of intent and motive on the part of the defendants." Baraka v. McGreevy, 481 F.3d 187, 200 (3d Cir. 2007) (quoting Bogan, 523 U.S. at 54).

In determining whether an act is substantively legislative, the Third Circuit has looked to the number of affected individuals as a guide. E.g., Fowler-Nash v. Democratic Caucus of the Pa. House of Representatives, 469 F.3d 328 (3d Cir. 2006); Ryan v. Burlington County, N.J., 889 F.2d 1286 (3d Cir. 1989); Gallas v. Sup.Ct. of Pa., 211 F.3d 760 (3d Cir. 2000). While not dispositive, decisions that impact only a single or small number of individuals tend to be administrative, whereas those that affect a larger number of people or the community as a whole

are likely legislative. "Actions of an executive or administrative nature . . . are not entitled to absolute immunity." In re Montgomery Cnty., 215 F.3d 367, 377 (3d Cir. 2000).

The court in In re Montgomery Cnty., stated that the decision of the County's Salary Board to fire "a particular employee is a personnel decision that does not involve general policy making," and as such, the members of the Board were not entitled to legislative immunity." Montgomery Cnty., 215 F.3d at 377. See Ryan, 889 F.2d at 1290-91 (holding that decisions by county board of freeholders regarding jail staff and inmates were not substantively legislative because decisions did not affect community as a whole and legislative line-drawing was not implicated); Gallas, 211 F.3d at 774 n.14 (stating that a legislative body passing a de jure law affecting only one person might still be entitled to legislative immunity).

To satisfy the procedural prong, "constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." Ryan, 889 F.2d at 1291. The court in Ryan continued, "When the decision of a governing body has impact on the community as a whole, the proper procedures for legislating must be followed or that governing body . . . risks running afoul of constitutionally mandated due process rights." Id. "Since municipal corporations have been delegated legislative authority only within strictly defined statutory limits, they can only act legislatively when following the statutory procedures specified for such action." Abraham v. Pekarski, 728 F.2d 167, 175 (3d Cir. 1984).

In Bogan, the Supreme Court held that city officials were immune from liability under § 1983 for voting to eliminate the city's Department of Health and Human Services ("DHHS") of which the plaintiff was the sole employee. Bogan, 523 U.S. at 47. There, the plaintiff had alleged that the decision was racially motivated and made in retaliation for the plaintiff's

7

exercise of her First Amendment rights. Id. The decision-making process in Bogan included the mayor's proposal to cut DHHS as part of his proposed budget, the city council ordinance committee's approval of an ordinance terminating DHHS, a vote by the full city council to approve the ordinance, and the mayor signing the ordinance into law. Id. In assessing whether such actions were legislative, the Court did not consider the defendants' alleged motives but looked strictly at the nature of these acts, deeming them "quintessentially legislative" in procedure. Id. The Court did not find the need to delve into the substance of the actions since, procedurally, the ordinance "bore all the hallmarks of traditional legislation." Id. Notably, the court in Bogan, expressed that the act

> reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.

Id. at 55-56 (emphasis added).

Here, Defendant claims that the contested action in which she participated was legislative in nature, and therefore, she is entitled to absolute immunity from suit. Like the Salary Board's decision to terminate a County employee in In re Montgomery Cnty., however, Defendant's attempt to prevent Plaintiff from assuming his elected position did not involve general policy-making and fails the substantively-legislative test. Referencing Bogan, the "hiring or firing of a particular employee" is not protected by legislative immunity. Bogan, 523 U.S. at 56.

### 2. Qualified Immunity

Defendant also claims that she is entitled to qualified immunity, which "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

8

known." Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (citing Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (internal quotation marks, brackets, and citations omitted)).

Defendant contends that the Township's suit against Plaintiff was based on a conflict of interest, and concludes that because "it cannot be said . . . that a committee person would have (or even should have) known that attempting to restrain the swearing in of a committee person elect, who contemporaneously was suing Downe, was unconstitutional." Br. In Support of Def.'s Mot. to Dismiss, 11. Further, Defendant argues that Plaintiff cannot show that "his right to his elected position, under the facts presented, was a clear constitutional right, of which the defendants should have known." Id. However, Plaintiff alleges that his constitutional rights were violated when Defendant, a state actor, knowingly took legal action to either deprive him of his elected seat on the Committee or demand that he drop his suit—an allegation that Plaintiff could plausibly prove. Accordingly, the decision is not protected by qualified immunity. See In re Montgomery Cnty., 215 F.3d at 377.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**. An accompanying Order shall issue today.

Dated: 6/25/2012　　　　　　　　　　　　　　　　　　　/s/ Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge